Annette CORTIGIANO, Randall Reede, Alfred Roberts, Anna Coughlin, Antonio Ilarrazza, Roger Rosen, and Robert Wayne, on behalf of themselves and others similarly situated, Plaintiffs,

v.

OCEANVIEW MANOR HOME FOR ADULTS and Joseph Rosenfeld, Operator and Administrator, Oceanview Manor Home For Adults, Defendants.

No. 04–CV–4077(ILG).

United States District Court, E.D. New York.

April 4, 2005.

Susan J. Kohlmann, Karen B. Dine, David Keyko, Carolina A. Fornos, Nancy V. Thornton, Pillsbury Winthrop LLP, Lycette Nelson, Jeanette Zelhof, MFY Legal Services, Inc., New York, NY, for Plaintiffs.

Neil B. Ptashnik, Theresa Scotto–Lavino, Ptashnik & Associates, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

Plaintiffs Annette Cortigiano ("Cortigiano"), Randall Reede ("Reede") and Alfred Roberts ("Roberts") (collectively, "plaintiffs"), filed this putative class action lawsuit against Oceanview Manor Home for Adults ("Oceanview"), an adult care facility, and its operator and administrator, Joseph Rosenfeld ("Rosenfeld") (collectively, "defendants"), to eliminate discrimination on the basis of their disability. Plaintiffs assert claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (the "Rehabilitation Act"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the New York Social Services Law, N.Y. Soc. Serv. § 131-o, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, the Administrative Code of the City of New York, N.Y.C. Admin. Code § 8–101 *et seq.*, and common law claims for breach of contract and breach of fiduciary duty. Pending before the Court are plaintiffs' motions to amend the complaint, to amend the caption, and for class certification. For the reasons set forth below, plaintiffs' motions are granted.

### BACKGROUND

Unless otherwise specified, the following facts are drawn from the complaint. Oceanview, located in Brooklyn, New York, is a for-profit adult home, providing long-term residential care to the elderly. (*Id.* ¶¶ 13–14). At the time the complaint was filed in September, 2004, Oceanview had approximately 175 residents, many of whom suffer from mental illnesses. (*Id.* ¶ 16). Oceanview is licensed by the New York State Department of Health ("DOH") and is therefore subject to New York State law and regulations. (*Id.* ¶ 15). Rosenfeld holds a certificate to operate Oceanview pursuant to New York law. (*Id.* ¶ 19). The admission agreement which Oceanview requires residents to sign states as follows: "The parties to this agreement understand that this facility is a Residential Care facility providing lodging, room, board, housekeeping, supervision, and personal care services to the resident in accordance with the New York State Social Services Law and the Regulations of the New York State Department of Health." (*Id.* ¶ 22).

Plaintiffs are mentally disabled residents of Oceanview. (Compl.¶¶ 10–12). They are recipients of Supplemental Security Income ("SSI") and pay Oceanview a fixed rate determined by the State of New York, in exchange for room, board, housekeeping, personal care, supervision and social services. (*Id.* ¶ 3). One or more of the plaintiffs receives Social Security Disability Insurance ("SSDI") as a result of their employment history. (*Id.* ¶ 27). Because SSI recipients receive little or no economic assistance above that paid to the adult home in which they live, the New York State legislature established a mandatory Personal Needs Allowance ("PNA") from a state supplement which is paid to individuals, like plaintiffs, to allow them to purchase personal items that they otherwise would be unable to afford, including clothing, toiletries, newspapers and snacks. (*Id.* ¶¶ 4, 32). For example, in 2004, SSI recipients living in an adult home received an allowance of $127 per month for their personal needs, and individuals who were also SSDI recipients, received an additional $20 per month for a total monthly allowance of $147. (*Id.* ¶ 31). That money is sent monthly to the beneficiary or a payee designated by the beneficiary. (*Id.* ¶ 34).

Because plaintiffs do not have their own bank accounts and have no money other than the governmental assistance they receive, they negotiate their monthly checks to Oceanview and maintain accounts with the home consisting of their monthly PNA. (Compl.¶ 35). Oceanview has a very restrictive window in which plaintiffs are permitted

to withdraw their PNA even though it advertises that they are able to do so between 10 am and 2 pm on weekdays. (*Id.* ¶ 36). If plaintiffs are not at home or available to stand on line at the time defendants unilaterally determine they must withdraw their PNA, they do not receive it. (*Id.*). Further, defendants condition receipt of plaintiffs' PNA on their attendance in day treatment programs, which are ostensibly entirely voluntary. (*Id.* ¶ 37). If plaintiffs do not attend the voluntary programs, they cannot obtain their PNA. (*Id.*)

Cortigiano moved to the home in April, 2003, and until April 12, 2004, she received her PNA directly. (Compl. ¶ 39). Even though Cortigiano received a monthly PNA in the amount of $147 during this time period, defendants told her she could only access $35 of it per week. (*Id.* ¶ 45). In February, or March, 2004, defendants filed an application with the Social Security Administration to become her representative payee. (*Id.* ¶ 40). On or about March 29, 2004, they asked Cortigiano to sign a form designating Oceanview as her representative payee, but she refused. (*Id.* ¶ 41). The next day, defendants threatened to withhold her PNA if she did not sign the form. (*Id.* ¶ 42). Under duress, Cortigiano signed the form. (*Id.*) However, she was still only allowed to withdraw $35 of her PNA per week. (*Id.* ¶ 46).

Defendants routinely demanded to know what Cortigiano purchased with her PNA. (*Id.* ¶ 47). Cortigiano repeatedly asked defendants for her full monthly PNA, for example, to allow her to pay her expenses in visiting her son in Staten Island, but they refused. (*Id.* ¶¶ 48–49). Moreover, defendants regularly checked whether she was attending a voluntary day treatment program, and if she was not, they would not remit her PNA. (*Id.* ¶¶ 53–56). Beginning in January, 2004, defendants put Cortigiano on a budget of $5 per day because of her failure to attend the voluntary program. (*Id.* ¶ 50). As a result of her demands that defendants remit her PNA at the beginning of every month by direct deposit, defendants threatened to evict her. (*Id.* ¶ 60).

Reede has resided at Oceanview since December, 2002, and has at all times been his own payee. (Compl. ¶¶ 61–62). Defendants condition Reede's receipt of his PNA on his taking a shower. (*Id.* ¶ 63). They restrict his control over his PNA, for example, by denying him the ability to withdraw more than $5 per day from his account. (*Id.* ¶¶ 67). Reede is afraid to ask defendants for more money because he fears they will abuse him verbally. (*Id.* ¶ 66).

Defendants withhold Roberts' allowance when he does not attend a voluntary day treatment program. (Compl. ¶¶ 71–74). They ask Roberts if he has showered and threaten to withhold his allowance if he does not. (*Id.* ¶ 76). In the winter, defendants refused to provide Roberts with his allowance which prevented him from purchasing a coat which he needed. (*Id.* ¶ 77). When Roberts requires a personal item, such as clothing, defendants will go to the store to purchase it for him instead of allowing him to do so, thus depriving him of his right to choose what he buys with his PNA. (*Id.* ¶ 78). In a letter dated February 10, 2004, Roberts, through his attorney, asked defendants to cease their practice of conditioning the receipt of his allowance on his attendance at a day treatment program. (*Id.* ¶ 79). Defendants failed to respond meaningfully to his request. (*Id.*). They told Roberts that they would not change their policies even if he threatened or commenced litigation. (*Id.* ¶ 80).

The facts giving rise to the claims of the plaintiffs who are sought to be added pursuant to the motion to amend the complaint are similar to those of the originally named plaintiffs. *See* Notice of Motion for leave to file an amended complaint Exh. A, attaching proposed amended complaint ¶¶ 13–14, 17–18, 37, 72–76, 78–79, 81, 85–91, 116, 119, 121, 125–27, 129, 132.

## DISCUSSION

### I. Plaintiffs' Motion to Amend the Complaint and the Caption

Pursuant to Fed.R.Civ.P. 15(a), plaintiffs seek leave to amend their complaint to add Anna Coughlin, Antonio Ilarrazza, Roger Rosen and Robert Wayne as additional named plaintiffs (the "Additional Named Defen-

dants"), and to modify the caption to reflect the proposed amendment.[1] In opposition, defendants argue that plaintiffs' motion is "untimely and severely prejudicial to the defendant[s]." (Affirmation of Theresa Scott–Lavino, dated January 18, 2005 ("Scott–Lavino Aff.") ¶ 1(a)). Alternatively, defendants rely on Fed.R.Civ.P. 20 and argue that the proposed plaintiffs do not seek relief arising "out of the same transaction, occurrence, or series of transactions or occurrences" giving rise to the original complaint and that there are no common questions of fact or law between plaintiffs and the Additional Named Plaintiffs. (Scott–Lavino Aff. ¶¶ 5–10).

As an initial matter, the Court finds that Fed.R.Civ.P. 15(a) and 21 govern this motion. Fed.R.Civ.P. 20, relating to the permissive joinder·of parties, is relevant to the extent that the "court's decision to permit joinder is based on whether the claims of the additional plaintiffs arose out of the same or separate acts or occurrences." *Ford v. Air Line Pilots Assoc. Int'l*, 268 F.Supp.2d 271, 295 (E.D.N.Y.2003) (citations omitted).

■ In general, a motion for leave to amend is addressed to the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Fed.R.Civ.P. 15(a) provides, in part, that once a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend will generally be granted where the moving party has demonstrated "at least colorable grounds for relief" absent a showing of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the amendment. *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir.2003); *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir.1998) ("considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to

deny leave to amend.") (internal quotation omitted).

■ Rule 21 states that parties may be "added by order of the court on motion of any party." Fed.R.Civ.P. 21. *See also Sullivan v. West New York Residential, Inc.*, 2003 WL 21056888, at *1 (E.D.N.Y. Mar.5, 2003) ("Rule 21 allows the court broad discretion to permit the addition of a party at any stage in the litigation") (citations omitted). Therefore, where parties satisfy the requirements under Fed.R.Civ.P. 15(a) for leave to amend, they will generally be permitted to add parties under Fed.R.Civ.P. 21. *Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y.1986) (citing 7 Charles A. Wright, Arthur Miller & Mary K. Kane, Federal Practice and Procedure § 1688 (2d ed.1986)).

## A. Undue Delay, Dilatory Motive, Bad Faith and Repeated Failure to Cure

■ In asserting that this motion is "untimely," *see* Scott–Lavino Aff. ¶ 1(a), defendants appear to argue that plaintiffs have unnecessarily delayed bringing this motion or acted in bad faith. This contention is belied by the undisputed facts. Plaintiffs filed the complaint on September 21, 2004. After obtaining two extensions of time, defendants filed their answer on November 1, 2004. Plaintiffs served this motion on or about January 10, 2005, less than four months after they filed the complaint, and before discovery has commenced and a scheduling conference was ordered by the magistrate judge. This also suggests an absence of dilatory motive.

The evidence therefore reveals that plaintiffs acted in good faith in bringing this motion. They did not name the additional plaintiffs in the original complaint because when it was filed, their lawyers were unable to corroborate the allegations they now seek to assert on their behalf. (Declaration of Lycette Nelson executed on January 7, 2005 ¶ 2). After plaintiffs' counsel determined the factual and legal bases for their claims, she asked defendants' counsel to consent to the

---

1. Plaintiffs also seek leave to change the caption to reflect the correct spelling of plaintiff Randall Reede's last name. In the complaint, Mr. Reede's name was incorrectly spelled "Reade."

Defendants have not opposed this portion of plaintiffs' motion, and therefore it is granted on consent.

proposed amendment. (*Id.* ¶ 5). Defendants' counsel refused, and plaintiffs filed this motion promptly thereafter. This demonstrates that plaintiffs acted in good faith.

### B. Undue Prejudice

■ A review of the complaint and the proposed amended complaint demonstrates that the facts giving rise to the claims of the Additional Named Plaintiffs are the same or virtually the same as those of the named plaintiffs. Therefore, the proposed amendment would not: (a) require defendants to expend significant additional resources to conduct discovery and prepare for trial, or (b) significantly delay resolution of this case. *See generally Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir.1993) (setting forth factors giving rise to undue prejudice in seeking leave to amend complaint). For these reasons, the Court finds that allowance of the amendment will not unduly prejudice defendants.

### C. Futility

■ An amendment is futile only if plaintiffs cannot demonstrate "at least colorable grounds for relief." *Ryder Energy Distribution Corp. v. Merrill Lynch Commod. Inc.,* 748 F.2d 774, 783 (2d Cir.1984). Since the claims of the Additional Named Plaintiffs mirror those of the existing plaintiffs both factually and legally, and because defendants have not moved to dismiss those claims and they set forth the essential elements, they are not futile. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991).

### D. The Claims of the Additional Named Plaintiffs Arise Out of the Same Acts or Occurrences

Defendants assert that the claims of the Additional Named Plaintiffs "do not arise from the same transaction or occurrence." (Scott–Lavino Aff. ¶ 10). The Court has examined the two out-of-jurisdiction cases cited by defendants—*Webb v. Westinghouse Elec. Corp.,* 1977 WL 15371, at *——, 1977 U.S. Dist. LEXIS 16122, at *2 (E.D.Pa. Apr. 29, 1977) (motion to add additional parties denied where it was filed on the eve of oral argument relating to application for class certification and parties sought to be added were not similarly situated to named plaintiffs) and *Martinez v. Safeway Stores, Inc.,* 66 F.R.D. 446, 448 (N.D.Cal.1975) (proposed claims of additional plaintiffs did not arise out of the same facts as the named plaintiffs' claims)—and finds each inapposite. As set forth above, the claims of the Additional Named Plaintiffs are substantially similar, if not identical, to those of the named plaintiffs. Therefore, the Court finds that the claims arise from transactions and occurrences which are substantially the same.

■ Against this background, plaintiffs have sustained their burden for leave to amend the complaint to add the Additional Named Plaintiffs. *See, e.g., Abrahamson v. Board of Educ. Of The Wappingers Central Sch. Dist.,* 2002 WL 1354711, at *12 (S.D.N.Y.2002) ("Plaintiffs ask for permission to amend their complaint to add more plaintiffs to the complaint. Since leave to amend should be freely granted when justice so requires, Fed.R.Civ.P. 15(a), plaintiff may submit an amended complaint with additional plaintiffs within the next ten (10) business days."); *Smith v. Bowers,* 337 F.Supp.2d 576, 579 n. 1 (S.D.N.Y.2004) (granting leave to amend complaint to add additional plaintiff where "no prejudice would result to Defendants"); *Doe v. Pataki,* 3 F.Supp.2d 456, 473–74 (S.D.N.Y.1998) (granting leave to amend complaint to add a proposed additional class of plaintiffs where defendants did not establish, among other things, undue delay or prejudice). Because leave to amend is granted, plaintiffs' motion to amend the caption to reflect that amendment is also granted. *See Fuller v. American Machine & Foundry Co.,* 95 F.Supp. 764, 766 (S.D.N.Y.1951) (invoking Rule 21 in accepting plaintiffs' "proposal" to add additional plaintiff to the caption).

### II. Plaintiffs' Motion for Class Certification

Plaintiffs seek to certify a class consisting of "individuals who currently reside or will reside at Oceanview, who are mentally disabled, and who receive SSI." (Compl.¶ 25).

## A. The Court's Subject Matter Jurisdiction

■ As a threshold matter, defendants argue that the Court lacks subject matter jurisdiction to decide plaintiffs' motion for class certification. (Scott–Lavino Aff. ¶¶ 30–32, 41–45). In support of their position, defendants argue that the Rehabilitation Act and ADA claims "fail as no discrimination has occurred due to plaintiffs' disabilities" and these federal statutes "do not apply to facilities not receiving federal funding." (*Id.*) Defendants' arguments are unpersuasive because if they are correct, then plaintiffs' claims fail as a matter of law, and can be disposed of on a pre-trial motion. Defendants had the option to file a dispositive motion under Fed.R.Civ.P. 12(b) to dismiss those claims in lieu of filing an answer, but did not avail themselves of this option. The complaint sets forth the elements for a claim under both the Rehabilitation Act and ADA, which confers subject matter jurisdiction on this Court. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"); *see generally Williams–Velasquez v. Guardian Life Ins. Co.*, 2003 WL 22038567, at *1 (S.D.N.Y. Aug.29, 2003) ("The Court has subject matter jurisdiction of Plaintiff's ... ADA claim[ ] pursuant to 28 U.S.C. section 1331"). Therefore, defendants' challenge to the Court's subject matter jurisdiction as a basis for opposing plaintiffs' motion for class certification is rejected.

## B. Class Certification Standards

Rule 23 of the Federal Rules of Civil Procedure governs class certification. *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 18 (2d Cir.2003). Fed.R.Civ.P. 23(c)(1)(A) provides that "[w]hen a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action." Typically, as here, towards that end, plaintiffs file a motion for certification. *See, e.g., East Tex.*

*Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 404, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

■ The Supreme Court has held that the Court must undertake a "rigorous analysis" to determine whether Rule 23 requirements have been satisfied. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (hereinafter "*Falcon*"); *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999), *cert. denied*, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000). The party seeking class certification bears the burden of establishing the requirements of Fed. R.Civ.P. 23, though that rule should be liberally interpreted and not given a strict construction. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997). " '[T]o deny a class action simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle would destroy much of the utility of Rule 23.' " *Denney v. Jenkens & Gilchrist*, 2005 WL 388562, at *5 (S.D.N.Y. Feb.18, 2005) (citing *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968)). Therefore, it "seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Leider v. Ralfe*, 2003 WL 22339305, at *11 (S.D.N.Y. Oct.10, 2003) (citations omitted).

■ When considering a motion for class certification, the Court accepts the allegations in the complaint as true and does not conduct "a preliminary inquiry into the merits" of the case. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see also Caridad*, 191 F.3d at 291–92 ("A motion for class certification is not an occasion for examination of the merits of the case"); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978) (same). The Court may consider material outside the pleadings in determining whether to certify the proposed class, including affidavits.[2] *Sirota v. Solitron*

2. "[U]nder the prevailing view in this Circuit, the Court may not consider on a class certification motion ... the contrary evidence offered by de-

fendants." *DeMarco v. Lehman Bros., Inc.*, 222 F.R.D. 243, 247 (S.D.N.Y.2004) (citing *Caridad*, 191 F.3d 283).

*Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). In some cases, the court may conduct the required inquiry by relying solely on the pleadings, but in other cases, it must delve deeper and "probe behind the pleadings before coming to rest on the certification question," which may require discovery. *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364; *see also* 5 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 1785.3 ("In some instances, the court will be able to determine whether the suit is maintainable as a class action at an early stage and will do so"). In some of the latter cases, it will be necessary for the parties to conduct discovery to establish a sufficient evidentiary record from which to make the class determination. *See Sirota,* 673 F.2d at 571.

▮▮▮▮▮ "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140 (citation and internal quotation marks omitted). There are two prerequisites for certification of class actions. First, the party seeking class certification must prove that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party or parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132–33 (2d Cir.2001). Second, the party seeking class certification must show that the proposed class action falls within one of the types of class actions maintainable under Rule 23(b). For the proposed class to be certified, plaintiffs must satisfy all of these prerequisites. *Marisol A.,* 126 F.3d at 375–76. Each is addressed in turn.

### C. Fed.R.Civ.P. 23(a)

#### 1. Numerosity

▮▮▮▮▮ To satisfy the numerosity requirement of Rule 23(a)(1), plaintiffs must show that joinder is "impracticable." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). Plaintiffs are not required to specify an exact class size as a prerequisite to demonstrating numerosity. *Id.* at 935; *Nicholson v. Williams,* 205 F.R.D. 92, 98 (E.D.N.Y. 2001) ("Plaintiffs need not establish the precise number of potential class members since courts are empowered to make common sense assumptions to support a finding of numerosity") (internal quotation and citation omitted). Numerosity is generally presumed when a class consists of forty or more members. *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). Plaintiffs proffer evidence indicating that the number of class members exceeds 150. (Declaration of Lycette Nelson executed on January 10, 2005 ("Nelson 1/10/05 Decl.") ¶ 4). They base this number on publicly available census data which the DOH compiles on adult homes, last published in 2003, which reveals that at that time "161 residents of Oceanview were receiving either SSI or Safety Net Assistance and that more than 97 per cent of residents were recipients of mental health services." (*Id.*) Therefore, defendants' argument that "[a]t no time do the plaintiffs offer reasonable proof that their claims meet th[e] numerosity requirement" lacks merit. (Scott–Lavino Aff. ¶ 12). Moreover, defendants state that "the fact that Oceanview has the potential to house 176 residents should not be [a] factor in determining numerosity." (*Id.* ¶ 15). While this may be true in the abstract, plaintiffs have proffered admissible evidence that more than 150 residents at Oceanview come within the class definition which they advance. Thus, the Court's determination that plaintiffs have satisfied the numerosity requirement is neither premature nor lacking competent proof.

The Court further finds that joinder of all members of the class is impracticable, as many may be reluctant to serve as named plaintiffs in an action against the home where they live for fear of reprisals. In addition, the class members are, according to the complaint, mentally disabled, and thus they may

have no other means to exercise their rights because of inadequate resources to prosecute their own claims. Also, the relief plaintiffs seek in this case is predominantly injunctive in nature. *See, e.g., Matyasovszky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35, 40 (D.Conn.2005) ("when making a determination of joinder impracticability, relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members") (citation omitted). The numerosity requirement is thus met.

## 2. Commonality

The commonality element of Rule 23(a)(2), which requires the plaintiff to demonstrate that common issues of law or fact exist and affect all class members, is considered a "minimal burden for a party to shoulder." *Lewis Tree Service, Inc. v. Lucent Technologies Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y.2002). Individual circumstances of the class members can differ without precluding class certification so long as "common questions are at the core of the cause of action alleged." *Vengurlekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y.2003) (internal quotations and citations omitted). Commonality is assumed where the plaintiff seeks declaratory relief as opposed to individual relief. *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F.2d 150, 151 (2d Cir.1983).

Defendants argue that it is premature for the Court to certify a class action because plaintiffs "do not substantiate any of their claims of discrimination other than to make broad allegation[s] of discrimination." (Scott–Lavino Aff. ¶ 18). Defendants' argument opposing class certification is, in essence, that plaintiffs will be unable to discover facts to support their claims substantively. As discussed above, however, that is not a reason to deny the motion.

The Court agrees with plaintiffs that there are both legal and factual issues common to the class. Plaintiffs are all mentally disabled residents at Oceanview who receive SSI, and are thus entitled to a PNA. They claim that rather than unconditionally distributing the PNA to them, defendants have conditioned plaintiffs' receipt of the PNA on the mandatory performance of, among other things, certain activities which are otherwise voluntary. They also allege that defendants have deprived plaintiffs of control over their own PNA. Among the common legal questions affecting plaintiffs and the proposed class are the following: did defendants discriminate in violation of the Rehabilitation Act by withholding and/or conditioning the distribution of PNA's to which plaintiffs are entitled from their SSI checks?; did defendants fail to provide plaintiffs with reasonable accommodations for their disabilities at the home in violation of the ADA?; and did the defendants discriminate against plaintiffs in violation of the ADA by imposing improper terms and conditions on plaintiffs' receipt of benefits and services because of their mental disabilities? (Pls. Mem. at 16–17). Significantly, defendants do not contest that some common questions of law or fact are raised by the allegations in the complaint. Accordingly, the commonality requirement is met.

## 3. Typicality

A named plaintiff's claim is "typical" pursuant to Rule 23(a)(3) where each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendants' liability. *See Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001), *cert. denied*, 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002). "The rule is satisfied ... if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani*, 929 F.Supp. 662, 691 (S.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997). A putative class representative's claims are not typical if that representative is subject to unique defenses. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir.2000). Accordingly,

the commonality and typicality requirements " 'tend to merge' because '[b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *Caridad*, 191 F.3d at 291 (quoting *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364).

In opposition, defendants argue that "plaintiffs[ ] have provided no support that current residents or future residents will be able to plead any cause of action against Oceanview." (Scott–Lavino Aff. ¶ 23). As noted above, however, the Court does not concern itself with the merits of plaintiffs' claims at this stage, but is charged only with the task of determining whether plaintiffs satisfy the prerequisites to class certification under Rule 23. Moreover, the fact that one of the named plaintiffs no longer resides at Oceanview is not an impediment to class certification because each of the other named plaintiffs currently resides there.[3] Based on an analysis of the claims brought by the class representatives (except for Cortigiano) in the complaint and proposed amended complaint, the Court finds that plaintiffs have satisfied the typicality requirement. *See Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981). Specifically, accepting plaintiffs' allegations in the amended complaint as true, the other members of the class have the same or similar claims, the action is not based on conduct special or unique to the named plaintiffs, and the class members have been aggrieved by the same course of conduct. The fact that there may be slight variations in how defendants treated different plaintiffs (or putative class members) does not render the claims atypical. *Robidoux*, 987 F.2d at 937 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims"). That all members of the class would benefit from the named plaintiffs' action demonstrates that the typicality requirement is met. The Court thus finds that the named plaintiffs' claims are typical of those of members of the proposed class.

### 4. Adequacy

To determine whether the named plaintiffs are adequate class representatives under Fed.R.Civ.P. 23(a)(4), the Court must determine whether "1) plaintiffs' interests are antagonistic to the interest of other members of the class, and 2) plaintiffs' attorneys are qualified, experienced and able to

---

**3.** Defendants refer to Cortigiano, who resided at Oceanview between April, 2003 and September, 2004. (Am.Compl.¶ 12). Plaintiffs argue that Cortigiano still properly serves as a class representative even though she no longer resides at Oceanview based on the "relation back" doctrine. (Pls. Mem. at 19 n. 3). The Court disagrees. Under the "relation back" doctrine, where a named plaintiff's claim has become moot, class certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy. *See Comer v. Cisneros*, 37 F.3d 775, 798–99 (2d Cir.1994). Courts have applied the "relation back" doctrine in two circumstances. The first is where the claim in question is "capable of repetition, yet evading review"—that is, where the alleged unlawful actions are likely to continue but, by their inherent nature, are of such short duration that they are unlikely that any plaintiff could maintain an action challenging them. *Gerstein v. Pugh*, 420 U.S. 103, 110, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (finding that plaintiff's claim of detention without probable cause constitutes a "suitable exception" to the mootness doctrine on the grounds that "it is by no means certain that

any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class"). The second is where defendants are able to circumvent judgment by "buying off" named plaintiffs through the mooting of individual claims—*i.e.*, settling with the named plaintiff after a class action complaint has been filed. *White v. Mathews*, 559 F.2d 852, 857 (2d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *see generally Swan v. Stoneman*, 635 F.2d 97, 102 n. 6 (2d Cir.1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified."). Neither circumstance exists here because at least several of the named plaintiffs have lived at Oceanview for more than four years, *see* Am. Compl. ¶¶ 13, 14, and defendants have not entered into settlement agreements with any named plaintiff. Because Cortigiano's claims do not relate back to the filing of the complaint, the Court determines that they are moot and therefore Cortigiano cannot serve as a class representative.

conduct the litigation." *Baffa,* 222 F.3d at 60. In sum, the Court must satisfy itself that the proposed lead plaintiffs possess sufficient interest to pursue vigorous prosecution of their claims. *See Weltz v. Lee,* 199 F.R.D. 129, 133 (S.D.N.Y.2001). Both factors are satisfied in this case. The named plaintiffs' interests in obtaining the requested relief are not antagonistic to those of the other class members. Furthermore, as evidenced by the Nelson declaration, plaintiffs have chosen able, qualified and experienced counsel and have demonstrated their willingness and capacity to pursue their claims on behalf of themselves and other class members. (Nelson 1/10/05 Decl. ¶ 3). The adequacy requirement is therefore met.

### 5. Ascertainability

■ Although not derived from the plain language of Rule 23(a), courts have held that in order for a class to be certified, the named plaintiffs must demonstrate that there is an "identifiable class." *In re Methyl Tertiary Butyl Ether Products Liability Litig.,* 209 F.R.D. 323, 336 (S.D.N.Y.2002); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760, at 120–21 (2d ed. 1986) ("[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"). "This implied requirement is often referred to as 'ascertainability,' and requires that a court can determine who belongs to the class by reference to objective criteria. Class members need not be ascertained prior to certification, but 'the exact membership of the class must be ascertainable at some point in the case.'" *Id.* at 337. It must thus be "administratively feasible for a court to determine whether a particular individual is a member" of the class and to make this determination "without having to answer numerous fact-intensive questions." *Daniels v. City of New York,* 198 F.R.D. 409, 414 (S.D.N.Y.2001) (quotation omitted). Here, based on a plain reading of the class which plaintiffs seek to certify, a determination as to which residents of Oceanview fall within the class will be straightforward and can be determined with documents that are under the custody and control of defendants. Therefore, the ascertainability requirement implied in Fed.R.Civ.P. 23(a) is met.

### D. Satisfaction of Fed.R.Civ.P. 23(b)

■ Having found that the plaintiffs satisfy Rule 23(a), the Court turns to the requirements set forth in Fed.R.Civ.P. 23(b). Plaintiffs seek certification of a class under subsection (b)(2) of that rule which provides that a party seeking to maintain a class action lawsuit must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). The relief sought need not be solely equitable in nature: when both equitable and monetary relief are sought, the Court may still certify the class under subsection (b)(2) if it determines that certification is appropriate "in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Parker,* 331 F.3d at 20 (internal quotations omitted). In *Parker,* the Second Circuit explained that when making a determination about certification under subsection (b)(2), the Court must first determine whether, "even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought." *Id.* (quoting *Robinson,* 267 F.3d 147). "[T]he presence of a damages claim will not defeat maintenance of a class action under Rule 23(b)(2) when the requested ... injunctive relief is a significant component of the overall relief which plaintiffs seek." *In re Visa Check/Mastermoney Antitrust Litig.,* 192 F.R.D. 68, 88 (E.D.N.Y.2000) (internal quotation marks and citation omitted), *aff'd,* 280 F.3d 124 (2d Cir.2001), *cert. denied sub nom. Visa U.S.A. Inc. v. Wal-Mart Stores, Inc.,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002). Next, the Court must also consider whether "the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."

Here, plaintiffs seek "to enjoin [d]efendants from placing conditions on [p]laintiffs' receipt of their PNA funds" pursuant to the Rehabilitation Act and the ADA.[4] (Pls. Mem. at 22). If plaintiffs succeed on the merits, equitable relief will be appropriate to enjoin the unlawful conduct. In fact, the injunctive relief sought by plaintiffs is the primary relief they seek as evidenced by a review of the complaint. The gravamen of the complaint is that defendants deprived plaintiffs of their control over the PNA, which did not result in any direct economic harm to them. They seek an order from the Court requiring defendants to return control of their PNA to them.[5] Therefore, the injunctive relief is both necessary and appropriate should plaintiffs prevail on their federal causes of action. Because the plaintiffs have successfully fulfilled the requirements of Rule 23(a) and Rule 23(b)(2), the Court holds that certification of the putative class is proper.

### E.  N.Y. C.P.L.R. § 901(b)

Defendants argue that plaintiffs' motion should be denied because they seek relief under N.Y. Soc. Serv. Law § 131-o(3), and pursuant to N.Y. C.P.L.R. § 901(b), a class action cannot be certified.[6] (Scott–Lavino Aff. ¶¶ 31–40); *see, e.g., Leider v. Ralfe*, 2005 WL 152025, at *6 (S.D.N.Y. Jan.25, 2005) (noting that most, though not all, federal courts apply N.Y. C.P.L.R. § 901(b) when determining whether to certify a class action

under New York State law, and refusing to certify a putative class action under New York's antitrust statute). Regardless of whether defendants' argument has merit, plaintiffs state that they are not seeking certification under any cause of action brought under state law, but only under the Rehabilitation Act and ADA. (Pls. Rep. Mem. at 9–10). Plaintiffs' decision not to seek class certification for their state law claims is entirely appropriate. *See, e.g., Leider*, 2003 WL 22339305, at *9 (S.D.N.Y. Oct.10, 2003) (class certification appropriate under federal statutes but not state statute). Defendants' argument that N.Y. C.P.L.R. § 901(b) precludes class certification is therefore superfluous.

### *CONCLUSION*

Plaintiffs' motions to amend the complaint, amend the caption and for class certification are granted except that Annette Cortigiano shall not serve as a class representative. Plaintiffs are directed to file their amended complaint within five business days of their receipt of this Memorandum and Order. The class shall be composed of all individuals who currently reside or will reside at Oceanview Manor Home for Adults, who are mentally disabled, and who receive Supplemental Security Income, and the claims for which the Court grants class certification are limited to the Rehabilitation Act and the ADA.

---

4. Defendants argue that a class action cannot be maintained where the plaintiffs seek relief that is "prohibitory." (Scott–Lavino Aff. ¶¶ 28–29). The Court has examined the cases upon which defendants rely and find them inapposite, *see Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), and *Cutler v. Perales*, 128 F.R.D. 39, 46 (S.D.N.Y.1989). For example, the Second Circuit in *Galvan* was confronted with a situation where the plaintiffs sought only prohibitive injunctive relief, the disputed policy had been withdrawn by the defendants and they stated on the record that they would apply the court's ruling to all persons similarly situated. *See also Cutler*, 128 F.R.D. at 45 (the *Galvan* rule is narrow and only applies to those specific cases in which plaintiffs suing a governmental agency seek only prospective injunctive relief). That is not the case here. Plaintiffs seek more than just prohibitory relief, as they request the Court to order defendants to take affirmative action, for example, dispensing the PNA's in a fair and non-

discriminatory manner. In addition, defendants have not indicated that they would apply the Court's ruling to all persons similarly situated. Finally, class certification will make enforcement of any order in plaintiffs' favor easier since all of those parties actually aggrieved would have standing to compel enforcement of the order. *Koster v. Perales*, 108 F.R.D. 46, 55 (E.D.N.Y. 1985).

5. Unlike in *Parker*, discovery is not needed to determine whether plaintiffs have met their burden under Fed.R.Civ.P. 23(b)(2), a point which defendants' counsel all but conceded at oral argument.

6. N.Y. C.P.L.R. § 901(b), which specifies the prerequisites for a class action suit under New York law, prohibits a class action "to recover a penalty or minimum measure of recovery created or imposed by statute" unless it "specifically authorizes the recovery thereof in a class action."

The parties shall contact the magistrate judge assigned to this case forthwith so that the Court may establish a discovery schedule.

SO ORDERED.