Jerome **BRESSON** and Franklin M. **Brown**, on Behalf of themselves and all others similarly situated, Plaintiffs,

v.

**THOMSON McKINNON SECURITIES INC.**, Defendant.

No. 85 Civ. 1179 (GLG).

United States District Court, S.D. New York.

Jan. 19, 1988.

---

Jarblum, Solomon & Fornari, P.C., New York City, Greenfield & Chimicles, Haverford, Pa., Churchill & Ferguson, Atlanta, Ga., Klovsky, Kuby & Harris, Philadelphia, Pa., for plaintiffs and Class; James D. Fornari, Donald Eng, Richard Zuckerman, New York City, Nicholas E. Chimicles, Kenneth A. Jacobsen, Lawrence W. Abel, Brenda Nelson, Haverford, Pa., J. Alexander Porter, Glenn A. Delk, Gail Tusan Joyner, Atlanta, Ga., Sidney B. Klovsky, Paul N. Minkoff, Philadelphia, Pa., of counsel.

Hall, McNicol, Hamilton & Clark, New York City, for defendant; Thomas A. Dubbs, William E. Betz, of counsel.

## OPINION

GOETTEL, District Judge.

The named plaintiffs, Jerome Bresson and Franklin Brown, seek to represent certain investors injured by alleged violations of Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1987). The plaintiffs also make allegations of common-law negligence, fraud, and breach of fiduciary duty.

The defendant, Thomson McKinnon Securities, Inc., is a dealer and broker of corporate securities, and was an underwriter of the securities in question here.

Before us is the plaintiff's motion for class certification. The putative class consists of all persons who during the period January 1, 1981 through and including February 6, 1984 purchased from the defendant interests in the following limited partnerships: the Petro–Lewis Oil Income Programs, the Petro–Lewis Oil and Gas Income Programs, and the Petro–Lewis Deferred Income Program. Excluded from this class are: the defendant and the Petro–Lewis Corporation; their respective affiliates, officers, directors and employees; and corporations, trusts or entities controlled by any of the foregoing.

## BACKGROUND

At the time pertinent to this action, the Petro–Lewis Corporation was an independent producer of oil and gas, and a manager of petroleum investments for public investors. On an approximately monthly basis, Petro–Lewis formed limited partnerships, the stated objectives of which were to purchase producing oil and gas properties. These limited partnerships were marketed to the public nationwide by various means, including sale through brokers such as the defendant Thomson. Petro–Lewis acted as a general partner in each of these limited partnerships.

Because of various poor business practices, such as the excessive leveraging of the partnership properties, and because of the declining price of oil during 1981 and 1982, the viability of Petro–Lewis, and of the limited partnerships, deteriorated. As the company's debt obligation continued to grow, and oil prices declined, the company came to face a cash squeeze. This situation was worsened by the fact that limited partners had a right to sell their investments back to Petro–Lewis. As more and more of them did so, the company's cash squeeze tightened further. In the face of this crisis, Petro–Lewis continued to make distributions to the limited partners. Although this course of action further drained available cash, Petro–Lewis had a strong interest in maintaining these distributions. By continuing the distributions, Petro–Lewis created an image of "business as usual" in the face of serious problems. This image was important to the company, because it maintained the attractiveness of investments in the limited partnerships. The continued attractiveness of the partnerships was crucial because the company was relying on continued sales of the investments to meet the company's demand for cash. The company also relied on further borrowing to meet this demand. In essence, Petro–Lewis was operating a sort of "Ponzi" scheme.

Finally, in February 1984, Petro–Lewis publicly acknowledged that its partnership syndication operation was in serious financial trouble. Thereafter, Petro–Lewis investors filed several class action lawsuits in the United States District Court for the District of Colorado against the directors of Petro–Lewis and against certain Petro–Lewis entities, to recover for their substantial losses. That court approved a settlement of eleven consolidated class actions for investors in the limited partnerships formed by Petro–Lewis between August 1975 and February 1984. Pursuant to the settlement agreement, the defendants in that case were released from liability in return for the formation of a royalty trust and a settlement fund valued at $23.5 million.

The broker-dealers who sold interests in the partnerships were specifically excluded from the releases executed in the Petro–Lewis litigation. Several individual and putative class actions against these broker-dealers followed, including the one at bar.

Approximately six months after the initial complaint in this case was filed, the Securities and Exchange Commission filed a complaint against Petro–Lewis alleging violations of Sections 17(a)(1), (2), and (3) of the Securities Act of 1933. In its complaint, the SEC charged that Petro–Lewis had misrepresented the performance of its existing oil and gas partnerships and the operations that future oil and gas partnerships would have, that it had misrepresented the profitability, safety, and liquidity of investments in the partnerships, and that it had purposefully presented an appearance of sound financial condition and "business as usual" when in fact it was experiencing serious debt and cash flow problems. The SEC also charged that several of Petro–Lewis' public statements concerning material corporate and partnership events were misleading because Petro–Lewis made technical and piecemeal disclosures of some facts and omitted others.

Against this background, the plaintiffs allege the following. The various prospectuses and other sales materials pursuant to which the defendant sold the investments varied somewhat, but were uniformly misleading in that they failed to disclose the true risks of the investments. They allegedly failed to disclose, *inter alia,* that partnership distributions were funded from loans rather than operations, that the partnership properties were excessively leveraged, or that Petro–Lewis' accounting procedures were questionable.

The plaintiffs allege that the defendant knew or should have known of the true financial state of Petro–Lewis and of the partnerships and knew or should have known that they were not viable. Moreover, the plaintiffs allege, the defendant knew that the prospectuses and sales material underlying the partnerships failed to disclose the precarious financial condition of the company and the partnerships and thus failed to disclose the true risk of the investment. They allege that notwithstanding this knowledge the defendant failed to disclose this knowledge to the investors and indeed intentionally concealed the risk of the investments from them.

## DISCUSSION

Before we can certify a class in this case, we must determine that all of the prerequisites of Rule 23(a) have been satisfied, and that at least one of the elements of Rule 23(b) is present.

### A. Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all aggrieved individuals would be impracticable. Fed.R.Civ.P. 23(a)(1). The plaintiffs allege that the instant class consists of hundreds, and possibly thousands, of individuals. Such numbers satisfy the numerosity requirement. *See Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir.1972).

However, there is the possibility that some class members may be subject to arbitration agreements. The Supreme Court recently upheld the enforceability of agreements requiring the arbitration of Rule 10b–5 claims. *Shearson/American Express Inc. v. McMahon,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Thus if the number of class members subject to such agreements is sufficiently large, and if the defendant chooses to compel arbitration of their claims, it could be that the remaining number of class members would not satisfy the numerosity requirement. However, the defendant has not pressed an argument that a large number of class members is subject to arbitration agreements, nor has it argued how many of those it would in fact compel to go to arbitration. Therefore we may assume that the number is not sufficiently large. If later developments show that the number is in fact sufficiently large so that the numerosity requirement is not met, then of course we are authorized to decertify the class pursuant to Fed.R.Civ.P. 23(c)(1) and (d)(4).

### B. Commonality

The second prerequisite of Rule 23(a) is that there exist questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). Thomson does not dispute that this element

is satisfied. However, Thomson argues that such common questions do not predominate over questions affecting only individual members of the class and that therefore the case cannot be maintained as a class action under Rule 23(b)(3).

■ The defendant argues that issues of reliance, which depend on individualized proof, predominate. We disagree. Although the plaintiffs' case involves a certain number of affirmative misrepresentations, the gravamen of their complaint is that the defendant engaged in a common course of conduct to withhold and conceal material information from the class. Their claim is that the defendant conspired with Petro–Lewis to present an image of "business as usual" and failed to disclose and indeed concealed material facts that would have shown that image to be an illusion. Thus, the plaintiffs present a course of conduct case which as pled satisfies the commonality requirement of Rule 23. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724–25 (11th Cir.1987) (appeal of three companion cases against other brokers, arising from the Petro–Lewis litigation); *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Our conclusion that common issues predominate is not altered by the defendant's argument that the prospectuses were not identical, and that Thomson's account representatives' discussions with class members likely varied. Notwithstanding the alleged differences among these various communications, there is nothing to indicate that they were not materially similar insofar as all of them contained the same omissions and half-truths. Moreover, the alleged omissions and half-truths related to objective factors such as Petro–Lewis' and the parterships' financial viability, or the safety and yield of the partnerships. Finally, the alleged misrepresentations originated from a common cause, namely Thomson's alleged failure either to conduct or to heed its own investigation of Petro–Lewis. Thus although the communications to class members may not have been uniform, they allegedly were uniformly misleading. The variations are therefore immaterial and will not defeat class certification. *Kirkpatrick*, 827 F.2d at 724–25; *In re Baldwin–United Corp. Litigation*, No. M 21–35, opinion at 8 (S.D.N.Y. Jun. 27, 1986) (Brieant, J.) (available on WESTLAW [1986 WL 444]) ("Even proof of a material variance among the representations will not defeat the class if certain omissions, inferred from their absence in the ... literature, were common to all.").

■ The defendant also claims that individual issues predominate because each class member's damages will differ. However, given the fact that issues pertaining to liability are predominantly common, rather than individual, the fact of individual issues as to damages will not defeat the class. *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). If necessary, the Court can order separate trials on the question of damages. *Green*, 406 F.2d at 301.

With respect to the plaintiffs' state-law claims for fraud, breach of fiduciary duty, and negligence, the defendant makes further arguments against certification. First, it argues that common issues do not predominate with respect to these claims because different state laws apply with respect to a credit based on the Colorado settlement against Petro–Lewis. This argument is addressed to the issue of damages, which we have treated above.

■ Next, the defendant points out that varying state laws may govern liability on the common-law claims, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), and that differing standards of liability obtaining under the several state laws will render class treatment of those claims unmanageable. For this reason, the defendant argues that with respect to the state-law claims, common issues of law do not predominate. With respect to the claims for fraud and breach of fiduciary duty, we disagree with the defendant's position and find these claims amenable to class treatment. The state laws governing these claims do not vary significantly, since common principles

underlie them. *See In re Lilco Securities Litigation,* 111 F.R.D. 663, 670 (E.D.N.Y. 1986) (citing W. Prosser, The Law of Torts §§ 105–110 (1971 4th ed.))(fraud). Moreover, the elements of at least the fraud claim will, for the most part, be established by proof of the federal claims. *See In re Baldwin–United Corp. Litigation,* opinion at 11.

■ We come to a different conclusion regarding the plaintiffs' claims for negligence. The state laws governing these claims do vary significantly, particularly with respect to the defenses of contributory negligence, comparative negligence and assumption of risk. The common-law negligence claims are therefore unsuited to class treatment.

### C. Typicality/Adequacy

■ Rule 23 also requires that the claims or defenses of the representative parties be typical of those of the class, and that the class representative be one who will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(3) and (4). The defendant argues that the plaintiff Brown is subject to a unique defense because he placed great confidence in his broker, Mr. Hallquist, and relied on his recommendations. Thomson claims further that the fact that Brown thought it a "plus" that Hallquist also invested in Petro–Lewis somehow makes Brown's relationship with his broker "quite special." Finally, on the basis of Brown's statements to the effect that he did not read the sales literature with great care, and that some of it confused him, the defendant surmises that Brown in fact relied exclusively on Hallquist's oral advice, and not at all on any of the sales literature sent to him. The defendant's arguments are not well taken, for the following reasons.

We see nothing unusual in the fact that an investor consulted his broker with respect to an investment the size of Brown's. Nor does the fact that Brown placed confidence in his broker make him atypical. Presumably, one should only use a broker in whom one does have confidence.

Moreover, we note that the defendant has not alleged that Hallquist gave Brown material information omitted from the sales material, so that one could not fairly say that Brown could have been deceived by its omission in the literature. This point is important since this case is based primarily on omissions rather than affirmative misrepresentations.

Finally, the defendant does not dispute that in fact Brown did read some of the literature. We have considered the defendant's other arguments concerning Brown on this issue, and find them to be without merit.

The defendant also argues that Bresson, Brown's coplaintiff, is subject to several defenses which are atypical of the class. Thomson suggests that the fact that Bresson consulted several high-level Thomson personnel about his investment renders him atypical of the class, whose complaint rests on the prospectus and other sales literature. We disagree. The defendant does not suggest that these discussions clarified the half-truths in the literature supplied to Bresson, or supplied information omitted from the literature, so that Bresson could not fairly be said to have relied on those half-truths and omissions. Bresson's discussions therefore do not make him atypical of the class. *See supra* p. 343. Bresson remains united with the other class members "in attempting to establish the defendant['s] liability for fraudulently creating an illusion of profitability and a false sense of security when the undisclosed facts suggest otherwise." *In re Baldwin–United Corp. Litigation,* opinion at 6–7.

■ Thomson also attacks Bresson's typicality on the basis that his and his broker's wives are cousins. We find this relationship too distant to affect the issue of Bresson's adequacy as a class representative. *Contra, Shankroff v. Advest, Inc.,* 112 F.R.D. 190, 194 (S.D.N.Y.1986) (holding that an identical relationship indicated atypical issues of reliance and a potential conflict of interests).

### D. Superiority

In addition to satisfying the requirements of Rule 23(a), the plaintiffs must

demonstrate that at least one of the elements of Rule 23(b) is also satisfied. The pertinent section of Rule 23(b) here is Rule 23(b)(3). We have already addressed the first requirement of this rule, which is that common questions of law or fact must predominate. We now turn to the second requirement, which is that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.

We note that the average investment at stake here is approximately $8,600.00. This amount would probably not be deemed sufficient to justify individual litigation. This fact supports the conclusion that a class action is a superior method for achieving an efficient adjudication of the matters in controversy.

Another consideration bearing on the superiority of class treatment concerns the manageability of the action as a class action. On this point, the defendant's arguments largely go to issues which concern the merits of the plaintiffs' claims. Such substantive issues are not proper subjects for review on a motion for certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). To the extent that the defendant's manageability arguments concern the common-law issues, we have discussed them above.

CONCLUSION

For the reasons discussed above, the motion for certification is granted, except that certification as to the claims for negligence under the common law is denied.

SO ORDERED.