Azmie MADANAT, on behalf of himself and all others similarly situated, Plaintiffs,

v.

**FIRST DATA CORP., et al., Defendants.**

**No. CV 11–364 (LDW)(ETB)** [1].

United States District Court, E.D. New York.

July 16, 2012.

---

**1.** The Court is grateful to *pro bono* law clerk Melissa Bassin, a graduate of the University of Miami School of Law, for her assistance in the preparation of this Report and Recommendation.

Mitchell M. Breit, Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP, New York, NY, Ali Abtahi, Idene Saam, The Abtahi Law Firm, San Mateo, CA, T. Christopher Tuck, Richardson Patrick Westbrook & Brickman, LLC, Mt. Pleasant, SC, for Plaintiffs.

Bobbie Jean Wilson, Joren S Bass, Perkins Coie LLP, San Francisco, CA, Brian P. Hennessy, J. Patrick Corrigan, Perkins Coie LLP, Palo Alto, CA, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge:

Presently before the court is a Report and Recommendation ("R & R") of the assigned Magistrate Judge, E. Thomas Boyle. The R & R recommends that Plaintiff's motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure should be

granted in part and denied in part. In particular, the R & R recommends that the motion should be granted with respect to Plaintiff's claim for declaratory relief and injunctive relief as it pertains to the Optional Liquidated Damages Clause contained in all of First Data's merchant agreements. In all other respects, the motion was recommended to be denied. Additionally, the R & R recommends that Plaintiff be appointed class representative and that Plaintiff's counsel be appointed class counsel.

The R & R is dated May 3, 2012, and was filed on the Court's ECF system under docket entry number 71, as of that date. The time to file objections having passed without receipt of such objections, the R & R is hereby adopted. *See* 28 U.S.C. § 636(b)(1)(c); Fed.R.Civ.P. 72. The motion for conditional certification is granted. The Clerk of the Court is directed to take appropriate action as to docket entry number 71.

SO ORDERED

## REPORT AND RECOMMENDATION

E. THOMAS BOYLE, United States Magistrate Judge.

TO THE HONORABLE LEONARD D. WEXLER, United States District Judge:

Before the Court is plaintiff's motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendants oppose the motion on the grounds that plaintiff's proposed class does not satisfy the requirements of Rule 23. For the following reasons, plaintiff's motion should be granted in part and denied in part.

### FACTS

First Data Corporation ("First Data") is a payment processing company. (Am.Compl. ¶ 15.) One of First Data's product lines involves the leasing of Point of Sale Terminals ("POS Terminals") that enable merchants to process credit card transactions. (*Id.*) First Data attracts consumers by entering into joint ventures with banks and financial institutions. (Am.Compl. ¶ 16.) The banks provide merchant accounts and First Data Merchant Services ("FDMS"), a subsidiary of First Data Corporation, provides POS Terminal leases. (Am.Compl. ¶ 16.) First Data and FDMS make monthly debits from a lessee's bank account to cover the cost of leasing a POS Terminal. (*Id.*)

In 1993, First Data partnered with Wells Fargo & Company ("Wells Fargo") to form Wells Fargo Merchant Services, LLC ("WFMS"). (Am.Compl. ¶ 19.) Plaintiff, Azmie Madanat, seeks to certify a class encompassing those individuals who leased POS Terminals from First Data through WFMS since January 1, 2006.[2] (Pl. Mem. of Law 3, 9.) Plaintiff signed a contractual lease agreement with Wells Fargo in October 2009 for a POS Terminal. (Madanat Decl. ¶ 4.) Pursuant to the lease agreement, plaintiff received a Verifone credit card processing machine from First Data, for which he agreed to pay thirty-nine dollars ($39.00) per month via an electronic debit from his Wells Fargo account. (Madanat Decl. ¶ 5.) This arrangement allowed plaintiff to accept credit cards as payment for services at his "Hot Wings" establishment, a food stand operated inside the food mart of a gas station in Oakland, California. (Madanat Decl. ¶ 2.)

In or about January 2010, weak sales performance forced plaintiff to close his business and terminate his contract with First Data. (Madanat Decl. ¶ 7.) However, plaintiff alleges that in February 2010, the defendants made three unauthorized debits from his Wells Fargo account for rental payments on his POS Terminal. (Madanat Decl. ¶ 8.) First Data also sent plaintiff invoices for the months of March, April, and May 2010, totaling $165.22. (Madanat Decl. ¶ 9.) On or about July 26, 2010, plaintiff paid the invoices

---

**2.** Excluded from the proposed class are: (1) employees of First Data Corporation and First Data Merchant Services Corporation, including their officers and directors; (2) any judge to whom this action is assigned and the judge's immediate family; (3) merchants who opened credit card processing accounts through institutions other than Wells Fargo Bank and Wells Fargo Merchant Services, LLC; (4) class members in *Eastman v. First Data Corp.*, Docket No. 2:20-CV-04860-WHW-MCA, currently pending in the United States District Court for the District of New Jersey; and (5) persons who timely and validly opt to exclude themselves from the Class. (Pl. Mem. of Law 8.)

with a check from his personal checking account with JP Morgan Chase Bank, N.A. (Madanat Decl. ¶ 11.) Plaintiff alleges that First Data then made subsequent unauthorized debits from his personal checking account on four separate occasions. (Madanat Decl. ¶ 12.)

Plaintiff commenced the within action on September 13, 2010, alleging the following causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) deceit, fraud and/or misrepresentation; (4) failure to disclose alternatives to lease options; (5) unauthorized electronic funds transfers; (6) violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693; (7) violation of the New York Deceptive Sales Practices Act; (8) conversion; (9) unjust enrichment; and (10) declaratory and injunctive relief. Plaintiff purports to bring this action on behalf of himself and the putative class, alleging common grievances with those individuals who entered into lease agreements with First Data through WFMS.

First Data acknowledges that 101,000 merchants leased POS Terminals that originated through WFMS during the relevant time period. (Def. Mem. of Law 23–24.) "The operative documents include a Merchant Application and a Program Guide." (Def. Mem. of Law 5.) "The Program Guide provided to Plaintiff and the members of the class is a standard form document containing material terms that are identical across the class membership." (Pl. Mem. of Law 1.) The leases themselves vary in terms of the length of the lease, the monthly rent, and the model of equipment leased. (Quaranta Decl. ¶ 8.)

Plaintiff filed the within motion for class certification on December 23, 2011. The undersigned held oral argument on the motion on April 10, 2012.

## DISCUSSION

### I. Class Certification Under Rule 23

During the oral argument held on April 10, 2012, the plaintiff narrowed the request for class certification previously before the Court.[3] (Tr. 5.) Plaintiff now seeks to certify two classes: (1) the Unauthorized Withdrawal Class, including those individuals whose bank accounts defendants made unauthorized withdrawals from either during the pendency of the lease or thereafter, and (2) the Optional Liquidated Damages Class, including those merchants who leased POS Terminals from First Data during the relevant time period, and seeking solely declaratory and injunctive relief.[4] (Tr. 5.)

In order to certify a class, plaintiff must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a) and one of the three prerequisites of Rule 23(b). *See* Fed.

---

3. Plaintiff initially requested class certification of four damages subclasses: (1) the Lease Overcharge Class, encompassing those individuals charged fees in excess of their contractual agreement for any billing period; (2) the Lease Break Penalty Class, including those individuals who engaged in early termination of their lease agreement with WFMS and who were required to make lease payments after the date of termination; (3) the Unauthorized Withdrawal Class, including those individuals whose bank accounts defendants made unauthorized withdrawals from either during the pendency of the lease or thereafter; and (4) the Electronic Funds Transfer Act Class, including those individuals from whose accounts defendants made withdrawals either without authorization to access the specific account or after the return of the POS Terminal. (Pl. Mem. of Law 7–8.) Plaintiff's narrowed request, as represented by plaintiff's counsel during oral argument, combines the Unauthorized Withdrawal Class and Electronic Funds Transfer Class and eliminates both the Lease Overcharge Class and the Lease Break Penalty Class.

4. The Optional Liquidated Damages Clause, found in the Program Guide distributed to all merchants who leased POS Terminals from First Data during the relevant time period, entitles First Data to accelerate the lease agreement and declare immediately due all remaining lease payments as well as the fair market value of the leased equipment, as determined by First Data. (Pl. Mem. of Law, Ex. 1 at 28.) The Court notes that plaintiff's motion papers refer to this provision as the Lease Break Penalty Provision. However, as stated *supra* at note 2, plaintiff's initial class certification request included a damages class entitled the Lease Break Penalty Class, which plaintiff has now withdrawn from his request for certification. For simplification, all references referring to the Lease Break Penalty Provision in connection with plaintiff's request for declaratory and injunctive relief utilize the term "Optional Liquidated Damages Clause." The Optional Liquidated Damages Class excludes those individuals who engaged in an early termination of their lease agreement with First Data, for whom the Optional Liquidated Damages Clause was not enforced. (Tr. 16.)

R.Civ.P. 23; *see also Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 Civ. 7813, 2011 WL 4389636, at *4, 2011 U.S. Dist. LEXIS 106356, at *13 (S.D.N.Y. Sept. 21, 2011) (citing *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.2006)).

The requirements of Rule 23(a) are as follows:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Plaintiff must satisfy these requirements for each class alleged. *See* Fed.R.Civ.P. 23(c)(5) ("[A] class may be divided into subclasses that are each treated as a class under this rule.")

■ In addition, the plaintiff must satisfy one of the three subsections of Rule 23(b). *See Bresson v. Thomson McKinnon Securities Inc.*, 118 F.R.D. 339, 345 (S.D.N.Y.1988). Plaintiff asserts that the proposed class meets the requirements for certification under both Rule 23(b)(2) and Rule 23(b)(3). (Pl. Mem. of Law 15.) Rule 23(b)(2) certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(3) requires plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Plaintiff bears the burden of establishing each of the requirements for class certification. *See, e.g., Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y.2006) (citation omitted).

■ District courts have "wide discretion" in deciding whether to certify a proposed

class under Rule 23, *id.* (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y.2001)), and "[t]he Second Circuit has directed district courts to apply a liberal, rather than restrictive, interpretation to Rule 23." *Lee*, 236 F.R.D. at 202 (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972)) (additional citation omitted). However, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).

## A. *Rule 23(a)'s Requirements*

### 1. *Numerosity*

■ Rule 23(a) requires that the proposed class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a) (1). "In this Circuit, numerosity is presumed at forty class members." *Lee*, 236 F.R.D. at 203 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995); *see also Damassia v. Duane Reade*, 250 F.R.D. 152, 156 (S.D.N.Y.2008) ("Numerosity is generally presumed where a class consists of 40 or more members.") "Plaintiffs are not required to specify an exact class size." *Guippone v. BH S & B Holdings LLC*, No. 09 Civ. 1029, 2011 WL 1345041, at *4 (S.D.N.Y. Mar. 30, 2011). Supplying credible information that a sufficient number of individuals fall within the definition of the proposed class is sufficient. *See Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 205 (E.D.N.Y. 2005) (finding numerosity requirement satisfied where census data was offered to prove the existence of 150 individuals falling within the definition of the proposed class).

■ Plaintiff has met his burden of establishing that a sufficient number of potential class members exist. Defendants acknowledge that 101,000 merchants fall within the class definition. (Def. Mem. of Law 23–24.) Defendants maintain records regarding the identity of these individuals for billing

purposes. (Def. Resp. to Pl. Interrog. No. 3, annexed to Pl. Mem. of Law at Ex. 6.) Company records are a reliable source for identification of potential class members. Furthermore, business records are admissible in court under Federal Rule of Evidence 803(6) and courts in this circuit have found admissible evidence sufficient proof that a plaintiff has satisfied the numerosity requirement. *See Cortigiano,* 227 F.R.D. at 204 (finding numerosity satisfied where plaintiff proffered admissible evidence demonstrating the existence of individuals falling within the definition of the class advanced). Plaintiff's ability to offer a pool of 101,000 thousand potential class members clearly satisfies Rule 23(a)'s numerosity requirement.

### 2. *Commonality*

Rule 23(a)'s commonality requirement provides that class certification is proper where "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This effectively requires "the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes,* 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982)) (internal quotations and alterations omitted). However, this does not prevent class certification where plaintiffs allege varied claims, so long as class members share a single question of law or fact in common. *See Dukes,* 131 S.Ct. at 2562 ("Even a single question of law or fact common to the members of the class will satisfy the commonality requirement") (internal quotations and citation omitted). "Th[is] common contention ... must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545.

Plaintiff asserts that the common link in this case is defendants' use of form contracts, namely, the Membership Application, Program Guide, and Equipment Lease Agreement. (Pl. Reply Mem. 3.) Specifically, plaintiff contends that "[t]he material language which establishes First Data's liability ... is similar across the class and thus lends itself to common treatment." (Pl. Reply Mem. 4.) Class members receive similar documentation that forms the basis of their contractual agreements with defendants and, based upon "these documents[,] Defendants systematically engage in unlawful, unfair, and fraudulent business practices directed at Plaintiff and the class members." (Pl. Reply Mem. 4.)

Defendants argue that plaintiff's claims are individualized claims, which plaintiff has failed to prove extend to the entire class. (Def. Mem. of Law 11.) Defendants contend that the majority of plaintiff's claims involve purported violations of law and requests for damages that have been held to be peripheral and irrelevant to the commonality aspect of certification by the Supreme Court in its recent decision, *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). (Def. Mem. of Law 10.) Furthermore, defendants argue that even if the Court considers the minority of questions not precluded by *Dukes,* plaintiff's inability to point to common evidence capable of resolving the issues presented renders this case inappropriate for class certification. (Def. Mem. of Law 11) ("None of these alleged injuries can be proven applicable or not applicable to the class based on common evidence.")

Defendants engage in a misapplication of the Supreme Court's commonality finding in *Dukes,* which involved employment discrimination claims on behalf of female employees of Wal–Mart. *See Dukes,* 131 S.Ct. at 2547. There, the Court found that in order for a complainant to prove that a company employs a discriminatory policy, they must demonstrate not only that disparities in areas such as pay and promotion exist, but also that the discrepancies are intentional. In other words, "the glue holding all of the individual class member's claims together was not merely disfavor in pay and promotion, but the *reason why* each class member was disfavored." *Jermyn v. Best Buy Stores, L.P.,* 276 F.R.D. 167, 170 (S.D.N.Y. 2011) (internal quotations and citation omitted) (emphasis in original). This case is distinguishable from *Dukes* because individual inquiries probing defendants' motivations are

both unnecessary and irrelevant. The mere fact that defendants may have engaged in any of the alleged practices alone would be enough to raise common questions of law.

In *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167 (S.D.N.Y.2011), the court certified a class where the common question involved Best Buy's potential violation of Section 349 of New York's General Business Law. *See id.* at 173 (denying motion to decertify class on the basis of *Dukes* ). The court in *Jermyn* reasoned that a policy of communicating to Best Buy's stores an intention to violate an advertised Price–Match Guarantee alone was sufficient for a finding of commonality because "[i]n the deceptive business practice context the 'why' is less relevant, if it is relevant at all." *Id.* at 172.[5] Similarly, in this case, a violation of the Electronic Funds Transfer Act could raise common questions among the class.[6] For example, a showing that First Data made unauthorized debits from class members' accounts alone would raise sufficient questions regarding whether the defendants violated the Electronic Funds Transfer Act without entertaining the question of why.

■ The commonality inquiry must turn on whether plaintiff has demonstrated that members within each class have suffered the same injury. *See Dukes,* 131 S.Ct. at 2551 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.") (internal quotations and citation omitted). In order to make this determination, the court must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that the commonality requirement has been met. *See In re IPO Sec. Litig.,* 471 F.3d at 41 ("[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.")

■ Plaintiff has failed to provide any reliable evidence that similarly situated individuals exist with respect to plaintiff's Unauthorized Withdrawal Class. Plaintiff has provided the following evidence to demonstrate that his alleged injuries apply to the class: (1) a website known as www.complaintsboard.com, where unidentified individuals have listed complaints similar to those of plaintiff; and (2) plaintiff's own affidavit and supporting documents. Defendants contend, and the undersigned agrees, that information displayed on a website is hearsay that is not admissible under any exception. *See* Fed. R. Ev. 801, 803. Furthermore, the contents of an unauthenticated website are extremely unreliable. A website lacks the capacity to prevent individuals from making multiple entries. Therefore, plaintiff or any other individual could literally log hundreds of complaints under the guise of different users.

The evidence offered by plaintiff does nothing to advance his claims that there are indeed individuals who suffered the same injuries as those he alleges. If plaintiff alleged that the documents themselves gave rise to the claims in this case, then the fact that 101,000 individuals contracted with First Data during the time period in question could provide sufficient evidence to support a finding of commonality. *See Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.,* 277 F.R.D. 97, 106 (S.D.N.Y.2011) (finding commonality where plaintiff's claims were based on whether an offering document was false or misleading). However, plaintiff's claims involve extrinsic conduct, for which plaintiff offers no tangible evidence that similarly situated individuals exist.

■ However, plaintiff's allegation that all class members signed contractual agreements incorporating the Optional Liquidated

---

**5.** Defendants argue that *Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65 (E.D.N.Y.2011), supports the contention that New York General Business Law § 349 cannot serve as the basis for establishing commonality. (Def. Mem. of Law 10.) However, the court in *Haynes* denied commonality on grounds not applicable to this case.

**6.** Defendants correctly assert that many of plaintiff's purported common questions are only peripheral to a commonality determination. However, a commonality assessment only requires the Court to find that one common question of fact or law exists and, therefore, the Court need not evaluate every potential question raised by plaintiff. *See Dukes,* 131 S.Ct. at 2562.

Damages Clause is sufficient to demonstrate commonality with regard to plaintiff's claims for injunctive and declaratory relief.[7] *Dukes* "does not preclude the Court from certifying plaintiffs' other claims for injunctive and declaratory relief ...." *Janes v. Triborough Bridge & Tunnel Auth.*, No. 06 Civ. 1427, 2011 U.S. Dist. Lexis 115831, at *16 (S.D.N.Y. Oct. 4, 2011). Rather, *Dukes* "left intact the principle in this Circuit that district courts should take full advantage of Rule 23(c)(4) to certify separate issues or certify those portions of a claim that satisfy (b)(2) even if the claim as a whole does not." *Id.* at 16–17 (quoting *United States v. City of New York*, 276 F.R.D. 22, 28 (E.D.N.Y.2011)) (internal quotations and alterations omitted). Plaintiff seeks a declaration that the Optional Liquidated Damages Clause is unenforceable under New York Law. (Am.Compl. ¶ 63.) Defendants incorporate the same Optional Liquidated Damages Clause in all relevant contracts and require application of New York Law. (Pl. Mem. of Law, Ex. 1 at 29.) The Court need only look at the terminology of the agreement in order to determine whether the Optional Liquidated Damages Clause is enforceable under New York Law. Furthermore, 101,000 merchants contracted with First Data to lease POS Terminals during the relevant time period. (Def. Mem. of Law 23–24.) The sheer number of individuals bound by agreements containing boilerplate language satisfies plaintiff's burden to demonstrate the existence of similarly situated individuals.

Defendants argue that because contractual leases differ, no uniform answer exists as to whether enforcement of the Optional Liquidated Damages Clause results in a grossly disproportionate monetary gain for First Data, in the event that a merchant defaults. (Tr. 20.) This is significant because New York Law provides that "[a] provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages ... is unenforceable." *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365,

361 N.E.2d 1015 (N.Y.1977). Defendants contend that the Court would need to conduct individual inquiries and assess the validity of the provision on a case-by-case basis. (Tr. 20.) This type of individualized inquiry, however, is prohibited by the Court in *Dukes. See Dukes*, 131 S.Ct. at 2551 ("What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.")

Defendants also point to disparities in individual lease agreements that have little bearing on the validity of the Optional Liquidated Damages Clause. For example, defendants refer to potential difficulties in re-leasing the machinery and the time and expense associated with reprogramming machinery and training new customers. (Tr. 20.) However, First Data only incurs these costs after a lessee defaults and both New York common law and the Uniform Commercial Code look at the circumstances surrounding the creation of the contract when determining whether a liquidated damages provision is enforceable. *See Truck Rent–A–Center*, 41 N.Y.2d at 425, 393 N.Y.S.2d 365, 361 N.E.2d 1015 ("Similarly, the agreement should be interpreted as of the date of its making and not as of the date of its breach."); *see also* N.Y. U.C.C. § 2A–102 ("[L]oss or damage to lessor's residual interest, may be liquidated in the lease agreement but only at an amount ... that is reasonable in light of the then anticipated harm caused by the default.") "In effect, a liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of a breach of the agreement." *Truck Rent–A–Center*, 41 N.Y.2d at 424, 393 N.Y.S.2d 365, 361 N.E.2d 1015. Therefore, the Court must focus on the disparities that exist at the time the contract is entered into.

According to defendants, individual merchant contracts often differ in terms of the length of the lease agreement and monthly rent. (Quaranta Decl. ¶ 8.) However, these

7. The Optional Liquidated Damages Clause entitles First Data to accelerate the lease agreement and declare immediately due all remaining lease

payments as well as the fair market value of the leased equipment, as determined by First Data. (Pl. Mem. of Law, Ex. 1 at 28.)

differences have little effect on whether the provision itself provides for reasonable damages. The Optional Liquidated Damages Clause entitles First Data to accelerate the lease agreement and declare immediately due all remaining lease payments as well as the fair market value of the leased equipment, as determined by First Data. (Pl. Mem. of Law, Ex. 1 at 28.) The accelerated lease payments will always equal the total amount of revenue First Data expected to receive had the parties each carried out their part of the bargain. Defendants argue that their recovery is uncertain because not every terminal that is returned can be re-leased and even when a terminal can be recycled, First Data incurs certain costs, including training merchants and reprogramming the equipment. (Tr. 20–21.) However, First Data has failed to present any evidence that these differences are foreseeable or can be differentiated when they enter into a new contract with a merchant. There is no evidence that First Data bears any greater risk of being unable to re-lease equipment in any particular scenario. First Data always bears the risk that the merchant could default at any time. Therefore, the Court need not conduct the kind of individual inquiries asserted by defendants, which, as stated above, are precluded by *Dukes.*

Based on the foregoing, plaintiff has satisfied the commonality requirement with respect to the Optional Liquidated Damages Class. Plaintiff has failed, however, to satisfy the commonality requirement with respect to the Unauthorized Withdrawal Class.

### 3. *Typicality*

Rule 23(a)'s typicality requirement demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993).

■ Plaintiff's claim for declaratory and injunctive relief asserts that class members suffer from a common grievance.[8] Plaintiff alleges that the Optional Liquidated Damages Clause is unenforceable under New York Law. This represents a uniform claim that will affect all class members equally, despite minor variations in the details of merchant contracts. Deviations in the terms of individual merchant contracts have no bearing on whether enforcement of the provision itself is valid under New York Law.

Accordingly, plaintiff has satisfied the typicality requirement with respect to his claim for declaratory and injunctive relief.

### 4. *Adequacy*

■ Rule 23(a)(4) requires plaintiff to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To establish adequacy, plaintiff must show that (1) the class representative's interests are not "antagonistic to the interest of other members of the class," and (2) that class counsel is "qualified, experienced and able to conduct the litigation." *Damassia,* 250 F.R.D. at 158 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000)).

■ Plaintiff proposes that he be named as class representative and has submitted an affidavit confirming his willingness to serve as class representative. (Madanat Decl. Ex. 3.) Plaintiff is the only potential plaintiff who has submitted such an affidavit in this case. Moreover, as discussed *supra,* plaintiff's claim for declaratory and injunctive relief with respect to defendants' enforcement of the Optional Liquidated Damages Clause is typical of all putative class members. "The fact that plaintiff['s] claims are typical of the class is strong evidence that [his] interests

---

**8.** Because plaintiff cannot satisfy the commonality requirement with respect to the Unauthorized Withdrawal Class that he seeks to certify, there is no need for the Court to continue analyzing that subclass under Rule 23(a). Without demonstrating commonality, plaintiff cannot succeed on his class certification motion with respect to the Unauthorized Withdrawal Class. Accordingly, the remainder of this Report and Recommendation pertains solely to whether plaintiff's claim for declaratory and injunctive relief is proper for class certification.

**314**

are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Damassia,* 250 F.R.D. at 158.

Nonetheless, defendants challenge the adequacy of plaintiff as class representative on the grounds that plaintiff has failed to prove his financial ability to sustain a class action. (Def. Mem. of Law 18.) Defendants point to plaintiff's 1996 bankruptcy proceeding as evidence that he has limited financial resources. (Corrigan Decl. Ex. C.) Defendants also allege that plaintiff has had three different homes foreclosed on since 2009. (Def. Mem. of Law 18.) Defendants emphasize that federal courts have looked at monetary circumstances in making adequacy determinations. (Def. Mem. of Law 18.) However, the only case defendants offer from this circuit applies a liberal analysis to the adequacy determination, finding that "Rule 23 requires only that there be no factors present which cast doubt on plaintiffs' ability to reimburse counsel, such as pending bankruptcy or financial distress." *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48, 53 (S.D.N.Y.1987). The financial difficulties raised by defendants occurred in plaintiff's past and fail to raise current concerns regarding his inability to support this action. Evidence of plaintiff's bankruptcy proceeding is particularly unpersuasive as it occurred sixteen years ago. Defendants have failed to raise any current or pending factors that raise concerns regarding plaintiff's adequacy to serve as class representative.

Defendants do not challenge the qualifications of plaintiff's counsel. Plaintiff is represented by three law firms: (1) Hanly Conroy Bierstein Sheridan Fisher Hayes LLP; (2) Richardson, Patrick, Westbrook & Brickman LLC; and (3) the Abtahi Law Firm. The undersigned takes judicial notice of the that fact that all of the named attorneys are experienced litigators who have served as counsel in numerous class action lawsuits. (Breit Decl. ¶ 3; Tuck Decl. ¶ 5; Abtahi Decl. ¶ 4.)

Accordingly, plaintiff has demonstrated adequacy sufficient to satisfy the requirements of Rule 23(a)(4) with respect to the Optional Liquidated Damages Class.

### B. *Plaintiff's Class is Ascertainable*

 Courts have implied an additional Rule 23 requirement "that there be an identifiable class." *Espinoza v. 953 Assoc. LLC,* 280 F.R.D. 113, 124 (S.D.N.Y.2011). Ascertainability dictates that "[i]t must thus be administratively feasible for a court to determine whether a particular individual is a member of the class and to make this determination without having to answer numerous fact-intensive questions." *Cortigiano,* 227 F.R.D. at 207.

Defendants contend that plaintiff's proposed subclasses are not ascertainable because "thosuands of 'mini-trials' would be needed to determine membership in each one." (Def. Mem. of Law 17.) As discussed *supra,* only plaintiff's class-wide claim for declaratory and injunctive relief remains applicable at this stage. Every merchant that contracted with defendants to lease a POS Terminal during the relevant time period is bound by the Optional Liquidated Damages Clause found in First Data's Program Guide. (Quaranta Decl. ¶ 8.) The Court can easily discern whether a merchant fits within the confines of the class. Any merchant who leased a POS Terminal from the defendants on or after January 1, 2006, with the exclusion of those individuals for whom First Data opted not to enforce the Optional Liquidated Damages Clause, fits within the proposed class.

Accordingly, plaintiff has demonstrated that the Optional Liquidated Damages Class is identifiable and ascertainable.

### C. *Rule 23(b)(2)*

Class certification under Rule 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes,* 131 S.Ct. at 2558.

 Defendants assert that plaintiff has failed to produce evidence of conduct that affects the class uniformly. (Def. Mem. of Law 31) ("[A]bsolutely nothing about the plaintiff's allegations of wrongdoing apply generally to the class.") Specifically, with regard to the Optional Liquidated Damages Class, defendants proffer that plaintiff's "contention that the . . . [clause] is illegal does not fit the bill because that is not an allegation of an act or refusal to act." (Def. Mem. of Law 32) (internal quotations omitted.) Defendants further assert that "even had the plaintiff alleged that the *enforcement* of the [Optional Liquidated Damages Clause] is the 'act' by First Data that is uniform across the class . . . there is no evidence that this is true . . . what it means to 'enforce' the [Optional Liquidated Damages Clause] varies." (*Id.*) (emphasis in original).

Notwithstanding defendants' arguments to the contrary, plaintiff has alleged a specific action that applies uniformly to the class. Plaintiff alleges that defendants enforced the Optional Liquidated Damages Clause as to him. Furthermore, all merchants that enter into a POS Terminal lease are bound by the same provision. The clause contains boilerplate language that remains constant, regardless of the individual circumstances surrounding its enforcement. This uniformity makes plaintiff's claim for declaratory and injunctive relief as to the Optional Liquidated Damages Clause appropriate for class certification.[9]

Accordingly, the Court should grant plaintiff's motion for class certification solely with respect to plaintiff's claim for declaratory and injunctive relief as it pertains to the Optional Liquidated Damages Clause found in the merchant agreements.

## II. *Plaintiff's Request For Class–Wide Declaratory and Injunctive Relief*

By this same motion, plaintiff requests that the Court grant class-wide declaratory and injunctive relief with respect to the Optional Liquidated Damages Clause now. This request should be denied as premature in light of the fact that merits discovery has yet to be conducted. Such a request is better suited for resolution by a motion for summary judgment after the parties have had a chance to engage in discovery.

### *Recommendation*

For the foregoing reasons, plaintiff's motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, should be granted in part and denied in part. Specifically, the motion should be granted with respect to plaintiff's claim for declaratory and injunctive relief as it pertains to the Optional Liquidated Damages Clause contained in all of First Data's merchant agreements. In all other respects, the motion should be denied. Plaintiff, Azmie Madanat, should be appointed class representative and plaintiff's counsel should be appointed as class counsel.

**SO ORDERED:**

Dated: May 3, 2011

---

9. The Court should not entertain plaintiff's claims for declaratory relief as to unauthorized withdrawals from any merchant account or rent overcharges. As stated *supra*, plaintiff has failed to satisfy the commonality requirement with regards to these claims. (*Id.* at 12.)